**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **HELEN R. HICKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **08 C 3829** |
| **v.** | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| **JOHN E. POTTER, U.S. Postmaster** | ) | |
| **General,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Helen R. Hicks ("Hicks") has sued her previous employer, John E. Potter, the Postmaster General, for disability discrimination and retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* Before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, the Court grants defendant's and denies plaintiff's cross-motion.

## Local Rule 56.1

Local Rule 56.1 sets forth the summary judgment filing procedure. LR 56.1. The local rule requires the movant to file a supporting memorandum of law and a statement of material facts along with any affidavits and other materials. LR 56.1(a)(1). The local rule also requires the nonmovant to file a statement of facts that responds to each numbered paragraph of the movant's statement of facts with specific references to the record to support the nonmovant's denial of any fact statement. LR 56.1(b)(3)(B). Any facts in the movant's statement that are not properly denied by the nonmovant will be deemed admitted for the purposes of summary judgment. *Id.* Because of the importance that Local Rule 56.1 serves with regard to organizing evidence and disputed facts, the U.S. Court of Appeals for the Seventh Circuit has consistently upheld a district court's requirement

of strict compliance with the Rule. *F.T.C. v. Bay Area Bus. Council*, 423 F.3d 627, 633 (7th Cir. 2005).

With these principles in mind, it is important to note that Hicks has failed to comply with her obligations under Local Rule 56.1. While Hicks responds to the facts submitted by the Postal Service, some of her responses do not conform to the clear mandate contained within the local rule that requires the nonmovant to provide the Court with "*specific* references to the affidavits, parts of the record, and other supporting material relied upon." LR 56.1(b)(3)(B) (emphasis added). For instance, Hicks denies various statements of fact without any reference to either the record. (*See, e.g.*, Def.'s LR 56.1(a)(3) Stmt. ¶¶ 37, 38, 49.) Other times, Hicks references entire pleadings. (*See, e.g.*, *id.* ¶¶ 35, 47.) The local rule dictates that specific references to the record be made, or else such facts will be deemed admitted. LR 56.1(b)(3)(C). Although Hicks' failure to provide specific references to the record as required by Local Rule 56.1 results in certain fact statements being deemed admitted, this does not mean that summary judgment will automatically be granted in favor of the Postal Service. The Court must still evaluate whether defendant has met its burden of establishing that there are no material questions of fact with respect to an essential element of the plaintiff's case. *See Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1138 (7th Cir. 2009).

## Facts

Unless otherwise noted, the following facts are undisputed or deemed admitted due to a party's noncompliance with Local Rule 56.1. From February 2002 to December 31, 2005, Hicks worked as an Accountable Paper Supply Clerk ("APS Clerk") at the Postal Service's facility in Bedford Park, Illinois, commonly known as South Suburban. (Def.'s LR 56.1(a)(3) Stmt. ¶ 4.) The

Postal Service describes the duties and responsibilities of an APS Clerk as follows: packaging and shipping stock to classified and contract stations and branches; supplying wholesale stamp clerk with stock; packaging and shipping stock to post offices within the area; replenishing redeemed stock; and maintaining inventories of Postal Service forms. (*Id.* ¶ 6.) Accordingly, APS Clerks are, during an eight-hour work day, engaged in physical activities such as lifting, pulling, pushing, carrying, reaching, walking, standing, leaning, stooping, kneeling and bending. (*Id.* ¶ 7.) Additionally, the APS Clerks lift and carry cases of stock that weigh over ten pounds. (*Id.* ¶ 8.)

From November 2002 until January 19, 2005, Hicks was absent from her job due to a non-work related injury to her right knee. (*Id.* ¶ 29.) During that time, she was diagnosed with osteoarthritis in her right knee and degenerative joint disease, which affects her ability to walk or stand for a prolonged period of time. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 3.) On January 19, 2005, plaintiff's personal physician cleared Hicks to return to work. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 29, 30.) Upon returning to work, Hicks submitted a light-duty request[1] to her supervisor, Rhondia Sullivan, with two medical documents explaining Hicks' physical restrictions. (*Id.* ¶ 31.) The first medical document Hicks provided was entitled "Consent to Return to Work" form, which stated "Patient to return to work-sedentary job. No lifting/pushing/pulling. May need job change/position change. Patient to return in one month." (*Id.*) The second was a "Light Duty (Work) Request," which stated that Hicks had (1) no restrictions for sedentary work; (2) full restrictions for light, moderate, and heavy lifting (anything over ten pounds); (3) partial restrictions for reaching above shoulders; (4) partial restrictions for walking (two to three hours) and standing (two to three hours); (5) partial restrictions for leaning; and (6) full restrictions for stooping, kneeling, bending and

---

[1] A light-duty assignment is a contractual benefit described in the Postal Service's collective bargaining agreement with the American Postal Workers Union ("APWU") and the Local Memorandum of Understanding. (Def.'s LR 56.1(a)(3) Stmt., Ex. 4, Agreement Between U.S. Postal Service and APWU at 6-7, Ex. 5, Local Memorandum of Understanding at 1.)

climbing.  (*Id.*)  The Request further stated that the duration of Hicks' work restrictions was "to continue."  (*Id.*)

The Local Memorandum of Understanding between the Postal Service and the APWU provides conditions for the reassignment of an employee to temporary or permanent light-duty positions.  (*Id.* ¶ 69.)  The Local Memorandum provides that "[e]mployees requesting light duty beyond a 90-day period will receive an extension if there are vacant positions available, provided there is no first time request to fill that vacancy."  (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 6.)  The APWU states that this term means that employees who have been accommodated in light-duty positions for more than ninety days may be displaced by employees who are requesting light-duty assignment for the first time.  (*Id.*)

On January 28, 2005, Hicks, accompanied by her union representative, Robert Haughton, attended a meeting with Sullivan and Sullivan's supervisor, Kristine Stevens, to discuss Hicks' light-duty request.  (Def.'s LR 56.1(a)(3) Stmt. ¶ 34.)  At the meeting, Hicks was asked what jobs she could perform given her medical restrictions.  (*Id.* ¶ 35; *id.*, Ex. 27, Haughton's Witness Stmt. at 1.)  Hicks replied that she needed to know what jobs were available before she could answer the question.  (*Id.* ¶ 35.)  Hicks was then told that her request would be evaluated by South Suburban's Reasonable Accommodation Committee ("RAC") to determine whether light-duty work within her restrictions was available.  (*Id.*)  Stevens then told Hicks again that she needed to know what her skills and job experiences were to determine whether a job could be found.  (*Id.* ¶ 36.)  Hicks did not respond to this request at the meeting.  (*Id.*)  Lastly, Hicks was told not to report to work until notified of the RAC's decision.  (*Id.*)  After the meeting, Hicks submitted a description of the job functions she could perform to Sullivan.  (Pl.'s LR 56.1(a)(3) Stmt. ¶ 35.)

On February 7, 2005, plaintiff filed a charge with the Postal Service's Equal Employment

Opportunity Commission ("EEOC") alleging disability discrimination based on her arthritis. (*Id.* ¶ 46.) Plaintiff stated that the Postal Service had failed to provide her with a reasonable accommodation and/or light duty because of her disability. (*Id.*) Sullivan received notification of the EEOC charge on February 18, 2005. (*Id.* ¶ 47.) On March 2, 2009, Sullivan, Stevens and Hicks engaged in mediation regarding Hicks' claims of discrimination. (*Id.* ¶ 48.) At the mediation, Sullivan and Stevens stated that no work was available within plaintiff's restrictions. (*Id.*)

By letter dated March 10, 2005, Sullivan informed Hicks that her request for light duty had been reviewed and, based on Hicks' medical restrictions and the available positions at South Suburban, her request was denied. (Def.'s LR 56.1(a)(3) Stmt. ¶ 39.) The letter also indicated that Hicks did not have to report to work on a daily basis, and instructed Hicks to call Sullivan every Monday to find out if light-duty work was available. (*Id.*)

On March 21, 2005, Hicks filed an EEOC complaint alleging disability discrimination based on the denial of her January 19, 2005 request for light-duty accommodations. (*Id.* ¶ 45.) Hicks named Sullivan and Stevens as the discriminating officials. (*Id.*) On April 4, 2005, the Postal Service's EEOC accepted Hicks' complaint for investigation. (*Id.* ¶ 46.)

In spite of being told that she did not have to report to South Suburban if there was no available work, Hicks reported daily to work from January 19 through January 24, 2005, and again from February 22 through March 11, 2005. (*Id.* ¶ 48.) On March 23, 2005, Sullivan took action to deny Hicks entry into the South Suburban facility due to her unruly and disruptive behavior during a visit to Sullivan's office on March 21, 2005. (*Id.*) Sullivan also denied plaintiff access because she caused disruption in her former unit and Stevens did not want Hicks to "fall and cause further injury to herself" while walking around the building. (*Id.* ¶ 49.) Hicks could enter South Suburban if she made an appointment. (*Id.*) Thereafter, Hicks amended her EEOC complaint to include a

claim of retaliation arising out of Sullivan's decision to deny her access to South Suburban unless there was available work. (*Id.* ¶ 50.)

## Discussion

Granting summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This Court must view the facts in a light most favorable to the non-movant while "drawing all reasonable inferences in her favor." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 529 (7th Cir. 2003). The nonmovant must "set forth specific facts, more than mere conclusions and allegations, sufficient to raise a genuine issue for trial; 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

## I. Discrimination

In the first count of her first amended complaint, plaintiff alleges that defendant discriminated against her in violation of the Rehabilitation Act by failing to reasonably accommodate her disability. (First Am. Compl. ¶ 26.) The Rehabilitation Act provides that no "qualified individual with a disability . . . shall, solely by reason of her or his disability, be . . . subjected to discrimination . . . by the United States Postal Service." 29 U.S.C. § 794(a). The Rehabilitation Act applies the same standards as those used to interpret the Americans with Disabilities Act ("ADA"). § 794(d). Under the ADA, discrimination includes not making a

reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an employee. 42 U.S.C. § 12112(b)(5)(A). To establish a *prima facie* case under the ADA, the plaintiff must prove that: (1) she is a qualified individual with a disability; (2) the defendant was aware of her disability; and (3) the defendant failed to reasonably accommodate her disability. *E.E.O.C. v. Sears, Roebuck & Co.,* 417 F.3d 789, 797 (7th Cir. 2005).

### A. Qualified Individual with a Disability

First, defendant argues that Hicks cannot satisfy the first element of her claim because there is no evidence that she suffers from a disability as defined by the ADA. Plaintiff is disabled within the meaning of the ADA if she (1) has "a physical or mental impairment that substantially limits one or more major life activities"; (2) has "a record of such impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). A physical or mental impairment includes "[a]ny physiological disorder, or condition . . . affecting one or more" body systems, including the neurological and musculoskeletal systems. 29 C.F.R. § 1630.2(h)(1).

It is undisputed that Hicks suffers from osteoarthritis and degenerative joint disease, which affects her ability to walk or stand for a prolonged period of time. (Pl.'s LR 56(a)(3) Stmt. ¶ 4; *id.*, Ex. D, Belich Report at 4.) Accordingly, because her disease affects her musculoskeletal system, Hicks' disease is a physical impairment within the meaning of the ADA.

However, to be disabled under the ADA, Hicks' impairment must substantially limit a major life activity. Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An individual is substantially limited in a major life activity if she is "[s]ignificantly restricted as to the condition, manner or duration under which . . . [she] can perform a particular major life activity as compared

to the condition, manner, or duration under which the average person in the general population can perform that same . . . activity." 29 C.F.R. § 1630.2(j)(1)(ii).

Plaintiff contends that her physical impairment substantially limits her ability to walk or stand. There is no dispute that Hicks' ability to walk or stand is limited to two hours in a ten-hour time period. (Pl.'s LR 56(a)(3) Stmt., Ex. M, Grieser Dep. at 50-54.) Further, in her affidavit, she states that her disease significantly limits her ability to walk or stand for prolonged periods of time. (*Id*., Ex. B, Hicks Aff. ¶ 4.) Even when considering these facts in the light most favorable to Hicks, her restrictions on standing and walking do not amount to significant restrictions on the condition, manner, or duration of her ability to stand or walk as compared to the average person. The EEOC regulations define a person with a walking disability as someone who can only walk for "*very brief periods of time.*" 29 C.F.R. pt. 1630, App., § 1630.2(j) (emphasis added). As the Seventh Circuit has held, a "very brief" period of time under the EEOC regulations is something less than forty minutes. *See Williams v. Excel Foundry & Mach., Inc.*, 489 F.3d 309, 312 (7th Cir. 2007) (reasoning that thirty to forty minutes was not a "very brief" period under the EEOC regulations for walking, and applying that standard to the major life activity of standing); *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186 (3d Cir. 1999) (finding that someone who could walk for fifty minutes unassisted was not substantially limited in his ability to walk); *Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir. 1996) (finding an individual who suffered from degenerative joint disease of the right hip, which caused him to walk slowly was not a substantial impairment on his ability to walk). Therefore, evidence that plaintiff cannot walk or stand for more than two hours in a day is insufficient to create a genuine issue of material fact that she is substantially limited in the major life activity of walking or standing.

Hicks also argues that she is disabled under the ADA because she has a record of a

substantially limiting impairment.  Having a record of a substantially limiting impairment is proven by having a record that reflects the kind of impairment that would impose a substantial limitation on one or more of an employee's major life activities.  42 U.S.C. § 12102(2)(B).  Hicks has records from her personal physician indicating she has osteoarthritis and degenerative joint disease, which limits her ability to walk or stand for more than two hours.  (Pl.'s LR 56(a)(3) Stmt. ¶ 4; *id.*, Ex. D, Belich Report at 4.)  While these records indicate that Hicks has a physical impairment under the ADA, they are insufficient as a matter of law to establish that she is disabled because they do not show that her ability to walk or stand is substantially limited.  *Williams*, 489 F.3d at 312 (reasoning that someone who could stand for more than thirty to forty minutes was not substantially limited in his ability to stand); *Taylor*, 177 F.3d at 186 (finding that someone who could walk for fifty minutes unassisted was not substantially limited in his ability to walk).  Therefore, plaintiff has failed to create a genuine issue of material fact as to whether she has a record of impairment.

Lastly, Hicks argues she is disabled under the ADA because defendant regarded her as having a substantially limiting impairment.  The EEOC regulations define "is regarded as having such an impairment" to mean that an individual has a physical or mental impairment that substantially limits a major life activity only as a result of the attitudes of others toward such impairment.  29 C.F.R. § 1630.2(*l*).  To establish this element, it is not enough to show that an employer knew of the plaintiff's impairment, but also that the employer believed that one or more of the plaintiff's major life activities was substantially limited by the impairment.  *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001).  It is undisputed that neither Sullivan nor Stevens knew Hicks had a disability or considered her to have a disability.  (Def.'s LR 56.1(a)(3) Stmt. ¶ 47.)[2]  Both believed Hicks suffered a non-work related injury to her right knee in 2002, and that she was cleared to return to work with certain medical restrictions in January 2005.  (*Id.*)   Further,

_____

[2] *See* discussion *supra* regarding plaintiff's failure to comply with LR 56.1(b)(3)(B).

the medical documents used to support Hicks' light-duty request did not establish or state that her injury was permanent.  (*Id.*)

Hicks argues that Stevens regarded her as having an impairment that substantially limited her ability to stand and walk because she denied plaintiff from entering the work premises partially because she did not want her to "fall and cause further injury to herself" while walking around the building.  (*Id.* ¶ 49.)  However, Hicks has failed to present sufficient evidence that Sullivan or Stevens believed that her ability to walk or stand was substantially limited.  The evidence presented, viewed in Hicks' favor, shows that Sullivan and Stevens knew Hicks had a temporary condition that physically restricted her ability to walk and stand for more than two hours.  Thus, Stevens' concern about the possibility of Hicks falling does not, in and of itself, raise a genuine issue as to a material fact regarding whether Stevens regarded her as being substantially limited with regard to walking.

Further, it is unclear from this evidence alone that Sullivan and Stevens believed Hicks could not walk or stand for a short period of time without injuring herself.  As previously discussed, an individual is substantially limited in her ability to walk if she can only walk for very brief periods of time.  29 C.F.R. pt. 1630, App., § 1630.2(j).  The Seventh Circuit has applied this standard to standing.  *Williams*, 489 F.3d at 312 (reasoning that thirty to forty minutes was not a "very brief" period under the EEOC regulations for walking, and applying that standard to the major life activity of standing); *Taylor*, 177 F.3d at 186 (finding that someone who could walk for fifty minutes unassisted was not substantially limited in his ability to walk).  Hicks has failed to provide any evidence that Sullivan or Stevens thought Hicks could only walk or stand for a very brief period of time.  In sum, Hicks has failed to create a genuine issue of material fact as to whether Sullivan or Stevens regarded her as having an impairment that substantially limits one or

more major life activities under the ADA. Nonetheless, even if Hicks had created a triable issue as to whether she was disabled under the ADA, her claim still fails because she has not created a genuine issue of material fact as to whether she is a qualified individual.

To be a "qualified individual" under the ADA, Hicks must establish that she is otherwise qualified to perform the essential functions of the job she holds or desires, with or without a reasonable accommodation. 42 U.S.C. § 12111(8); *Jackson v. City of Chi.*, 414 F.3d 806, 810 (7th Cir. 2005). The statute explicitly gives consideration to "the employer's judgment as to what functions of a job are essential." § 12111(8). The factors considered to determine whether a particular duty is an essential function include the employee's "job description, [the] employer's opinion, [the] amount of time spent performing the function, [the] consequences for not requiring the individual to perform the duty, and past and current work experiences." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004) (citations omitted); *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001) (citing 29 C.F.R. § 1630.2(n)(3)); *see also* 42 U.S.C. § 12111(8).

Hicks argues that she could perform the duties of her position as an APS Clerk without a reasonable accommodation. The Postal Service's job description for the APS Clerk position, in part, is as follows: packaging and shipping stock, supplying wholesale stamp clerk with stock, replenishing redeemed stock and maintaining inventories of Postal Service forms. (Def.'s LR 56.1(a)(3) Stmt. ¶ 6.) According to Hicks' supervisor, APS Clerks are, during an eight-hour day, engaged in physical activities such as lifting, pulling, pushing, carrying, reaching, walking, standing, leaning, stooping, kneeling and bending. (*Id.* ¶ 7.) Additionally, the APS Clerks lift and carry cases of stock that weigh over ten pounds. (*Id.* ¶ 8.)

Hicks argues that she could perform the essential functions of her position. Specifically, Hicks states she could: prepare master requisitions from individual requisitions, witness receipt of

stamp stock, package and ship stock, supply the wholesale stamp clerk with stock, prepare the daily report for the accounting office and replenish redeemed stock. (Pl.'s LR 56.1(a)(3) Stmt., Ex. Q, Hicks' Letter at 1-2.) She does not state, however, that she could physically stack and receive stock from storage areas, accept and witness the receipt of registered mail, or prepare outgoing registered mail stock, all of which are essential functions of the APS Clerk position. (Def.'s LR 56.1(a)(3) Stmt., Ex. M, RAC Worksheet at 9-11.) Further, plaintiff failed to state that she was capable of lifting items over ten pounds, stooping, kneeling and bending, all of which were precluded by her medical restrictions, but are also essential functions of the position. (*Id.*; Def.'s LR 56.1(a)(3) Stmt. ¶ 31.) Therefore, Hicks has failed to create a genuine issue of material fact that she can perform the essential functions of the APS Clerk position.

Hicks argues that the Court should not rely on her supervisor's description of the essential functions of the job because some of the functions are not specifically listed in the official job description, or alternatively, because they were not discussed with Hicks. This argument overstates the requirements of the relevant EEOC regulation, which provides that the Court's considerations of the essential functions of a position are not limited to the written job description. *See* 29 C.F.R. § 1630.2(n)(3). Under the regulation, the very first example of acceptable evidence of the essential functions of a position is the employer's judgment, and a supervisor's written job description is clearly an instance of the employer's judgment. *Id.* Further, absent sufficient evidence to the contrary, the Court will presume that the employer's understanding of the essential job functions is correct. *Basith,* 241 F.3d at 927.

Hicks presents evidence that she would have been able to perform some of the essential functions of her job by breaking heavier shipments into smaller loads and shipping them separately, and alternating between walking and sitting if the Postal Service provided her with a chair. (Pl.'s

Cross-Mot. Summ. J. 10.)  This argument, however, does not show how Hicks could perform all of the essential functions of her position without a reasonable accommodation as required under the ADA.  Therefore, defendant is entitled to judgment on plaintiff's discrimination claim.  As noted above, plaintiff has not created a genuine issue of material fact that she is a "qualified individual with a disability," and thus, the ADA affords her no relief.

### B.  Failure to Provide a Reasonable Accommodation

Hicks also argues that defendant failed to provide her with a reasonable accommodation for her disability.  The Court need not decide whether Hicks was denied a reasonable accommodation in light of her failure to show a question of fact exists as to whether she is a "qualified individual with a disability."  Assuming, however, that Hicks had been able to create a triable issue of fact that she was a qualified individual with a disability, the Court would still hold that Hicks' claim fails.

The ADA may require an employer to reassign a disabled employee to a vacant position as a reasonable accommodation if a disabled employee is unable to perform the essential functions of a job.  42 U.S.C. § 12111(9)(B); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996).  There are, however, limitations regarding the duty to assign.  For instance, an employer has no duty to "bump" an employee from a position just to accommodate the request of the disabled employee.  *Gile*, 95 F.3d at 499.  Nor is an employer obligated to create a new position for the disabled employee.  *Id.*  Furthermore, the accommodation must not impose an "undue hardship" on the employer.  § 12112(b)(5)(A).

Hicks argues that the Postal Service failed to accommodate her because it did not engage in an interactive process to determine the appropriate form of accommodation for her condition.  The failure to engage in the interactive process does not, by itself, give rise to relief.  *Rehling v. City of*

*Chi.*, 207 F.3d 1009, 1015-16 (7th Cir. 2000). Instead, the Court must first look at whether there is a genuine issue of material fact regarding the availability of a vacant position. *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001). If there was such a position, then the Court considers whether the failure to provide that accommodation was due to a breakdown in the interactive process. *Id.*

Hicks argues that the Postal Service failed to provide her with a vacant light-duty position as an accommodation in violation of its Local Memorandum of Understanding and Reasonable Accommodation policy. There is no dispute that the Local Memorandum of Understanding provides that "[e]mployees requesting light duty beyond a 90-day period will receive an extension if there are vacant positions available, provided there is no first time request to fill that vacancy." (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 6.) The APWU states, and defendant does not dispute, that this term means that employees who have been accommodated in light-duty positions for more than ninety days may be displaced by employees who are requesting a light-duty assignment for the first time. (*Id.*) The crux of the dispute between the parties is whether a vacant position was available such that this provision was applicable.

In the instant case, Hicks contends that the provision applies because defendant renewed a light-duty request from Andrew Kociper, who served in a light-duty position for more than ninety days. (Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 51-52.) Hicks opines that under the provisions of the Local Memorandum of Understanding, as a first-time requester, Hicks should have been given the vacant position instead of Kociper. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 6.) The record, however, is devoid of evidence that Kociper had been in a light-duty position for more than ninety days, such that the Local Memorandum of Understanding would apply. All the record shows is that Kociper requested a light-duty position on March 25, 2005 and was granted that position. (Pl.'s LR 56.1(a)(3) Stmt.,

Ex. J, Dep. of Hayes at 17.)  Hicks also relies on the deposition testimony of union representative Diana Hayes, who simply makes a blanket statement that because Kociper was granted a light-duty position on March 25, 2005, the Local Memorandum was violated.  (*Id.*)  Hayes' deposition does not explain whether Kociper was in a light-duty position for more than ninety days when he requested light-duty on March 25, 2005.  Moreover, she does not explain how she has first-hand knowledge of the details surrounding Kociper's request.  Absent a showing of personal knowledge, an individual's conclusion that certain employees were treated more favorably than others must be disregarded.  *Abioye v. Sunstrand Corp.*, 164 F.3d 364, 367 (7th Cir. 1998).  Further, conjecture and speculation cannot be used to defeat summary judgment.  *Id.*

Hicks has failed to create a triable issue of fact with regard to whether the Postal Service had any vacant positions available at the time she requested light-duty work.  As such, plaintiff fails to raise an issue of material fact with regard to the Postal Service's failure to provide her with a reasonable accommodation.  Therefore, the Court denies Hicks' cross-motion for summary judgment as to the Rehabilitation Act disability discrimination claim, and grants defendant's motion for summary judgment as to this claim.

## II.     Retaliation

Hicks also argues that the Postal Service retaliated against her in violation of the Rehabilitation Act for filing claims of disability discrimination in the workplace.[3]  *See* 29 U.S.C. § 794.  The Rehabilitation Act expressly incorporates the provision of the ADA prohibiting retaliation against "any individual because such individual has opposed any act or practice made unlawful by this chapter."  42 U.S.C. § 12203.  To establish a *prima facie* case of retaliation under the

---

[3] The provision of Title VII concerning retaliation is "materially identical" to the retaliation provision of the Rehabilitation Act.  *Twisdale v. Snow*, 325 F.3d 950, 952 (7th Cir. 2003).  Therefore, the analysis is the same under either statute.

Rehabilitation Act, the plaintiff may utilize the direct or indirect method.  *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006).  Under the direct method, a plaintiff may establish a *prima facie* case by showing that she (1) engaged in protected activity; (2) suffered an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse action.  *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

Here, it is undisputed that Hicks has satisfied the first element of her retaliation claim when she filed a disability discrimination charge with the EEOC.  Accordingly, the Court need only address whether Hicks has created a genuine issue of material fact regarding the second and third elements of her *prima facie* case under the direct method.

### A.  Direct Method

#### 1.  Adverse Employment Action

Under both the direct and indirect method, Hicks is required to show that she suffered an adverse employment action.  *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).  In order to be actionable, an adverse employment action must be "materially adverse . . .  meaning more than a 'mere inconvenience or an alteration of job responsibilities.'"  *De la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008) (quoting *Oest*, 240 F.3d at 612).  For example, a "materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993).  Although adverse employment actions can be defined broadly, mere temporary inconveniences related to an employee's job are not materially harmful, and do not rise to the level of what are

considered adverse employment actions. *Oest*, 240 F.3d at 613. In effect, mere unhappiness with an employer's conduct is insufficient to support a claim of retaliation. *See Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).

In the instant case, Hicks contends that she suffered an adverse employment action on three different occasions. First, when her supervisor subjected her to humiliating behavior by shouting at her, accusing her of providing fraudulent documentation and laughing at her. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 58.) Second, when her supervisor repeatedly failed to forward her requests for reconsideration for a reasonable accommodation to the RAC. (*Id.* ¶¶ 66-67.) Last, when her supervisor banned her from the work premises, which forced her into unpaid status. (*Id.* ¶¶ 61, 64.)

Hicks fails to create a triable issue of fact regarding whether her supervisor's alleged harrassing behavior amounted to an adverse employment action. General hostility and comments do not qualify as actionable adverse employment actions unless the hostility was severe and pervasive. *See Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 466 (7th Cir. 2002). Hicks provides evidence that at one meeting with Sullivan and union steward Robert Haughton, Sullivan shouted at her to update her medical documentation. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 58.) Also at this meeting, Sullivan stated that the documentation Hicks had previously provided was fraudulent, and when Hicks asked what that meant, Sullivan laughed at her. (*Id.*) Although her supervisor's comments and behavior may have been embarrassing, they are not sufficiently severe and pervasive to be actionable under Title VII. *Griffen v. Potter*, 356 F.3d 824, 829-30 (7th Cir. 2004) (holding that plaintiff did not suffer an adverse employment action when her supervisor commented that she was a "bad influence on the office" and that "she thought she knew everything"). Further, the comments did not result in any actual harm or tangible job consequences as to amount to a materially adverse employment action. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005)

(noting that reprimand without any immediate consequence does not qualify as adverse action); *Oest,* 240 F.3d at 613 (noting that criticism and reprimands alone are not materially adverse).

Next, Hicks has not created a triable issue of fact as to whether she suffered an adverse employment action because Sullivan failed to forward her requests for a reasonable accommodation to the RAC in April and May of 2005. (*Id.* ¶ 67.) Such evidence alone does not support Hicks' retaliation claim absent a showing that there was a vacant position available for which Hicks was qualified. *Novak v. Nicholson*, 231 F. App'x 489, 495 (7th Cir. 2007) (holding that employee failed to establish that federal agency's refusal to reassign him was in retaliation for filing an EEO complaint in violation of Title VII, where there was no evidence that there was a vacant position available for which employee was qualified); *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001) (holding that only if there is a vacant position, does the court consider whether failure to provide that accommodation was due to a breakdown in the interactive process). Hicks' failure to provide evidence of a vacant position for which she was qualified precludes her from relying on the Postal Service's failure to follow the interactive process by forwarding her requests for a reasonable accommodation to the RAC as evidence of retaliation. *See Novak*, 231 F. App'x at 495.

However, a reasonable jury could find that plaintiff suffered from an adverse employment action when she was denied access to the South Suburban facility and placed on unpaid status. It is undisputed that defendant's denying Hicks access to the facility rendered her unable to report for available work and forced her into unpaid status. (Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 55, 61, 64.) It is also undisputed that unpaid status can result in disciplinary action to the employee. (*Id.* ¶ 55.) Neither Hicks nor the Postal Service explains what the difference is between unpaid status and Hicks' employment status prior to being denied access to South Suburban. However, since neither party disputes that Hicks was placed on unpaid status after being denied access to South Suburban,

or explains the significance of her status change, a reasonable jury could conclude from the terminology alone that being placed on unpaid status would result in a material change in the terms or conditions of her employment. For this reason, Hicks has created a genuine issue of material fact as to whether being placed on unpaid status after being denied access to the South Suburban facility was an adverse employment action.

However, as discussed below, her retaliation claim ultimately fails because Hicks has failed to create a genuine issue of material fact that there was a causal connection between the protected activity and the adverse action.

## 2. Causal Connection

Without actual proof of retaliation, Hicks asks this Court to infer from the timing of events in her case that there is circumstantial evidence of retaliation. Specifically, Hicks argues that Sullivan's decision to deny her access to the workplace two days after she filed her EEOC Complaint creates a genuine issue of material fact as to whether Sullivan acted in retaliation. While "[t]here is no bright-line rule as to the amount of evidence necessary to survive summary judgment under the direct method, . . . it is clear that mere temporal proximity is not enough to establish a genuine issue of material fact." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004); *see also Springer v. Durflinger*, 518 F.3d 479, 485 (7th Cir. 2008); *Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 685 (7th Cir. 2007); *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007); *Stone*, 281 F.3d at 644. Hicks has provided no evidence of retaliation beyond the fact that two days elapsed between the filing of her EEOC Complaint of discrimination and defendant's decision to deny her access to its South Suburban facility. Therefore, she has not met her burden under the direct method of proof.

Even if plaintiff were able to create a genuine issue of material fact that there was a causal connection between the protected activity and the adverse action, plaintiff has not established that defendant's stated reasons for its adverse actions were a pretext for retaliation. Under the direct method, once plaintiff establishes a *prima facie* case of retaliation, defendant has the burden of production to show a non-discriminatory reason for its action. *Metzger v. Ill. State Police*, 519 F.3d 677, 680 (7th Cir. 2008). If defendant does so, the burden of production shifts back to plaintiff to show that defendant's proffered reason is a pretext for retaliation. *Id.*

First, plaintiff has not created a triable issue of fact that Sullivan's reasons for her conduct, which plaintiff viewed as harassment, at a single meeting when she allegedly asked Hicks for updated medical documentation, told her that other documentation she had submitted was fraudulent, and laughed at her were a pretext for retaliation. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 58.) It is disputed whether any harassing behavior occurred. (Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 58.) However, even if the Court assumes it did occur, there is nothing in the record to suggest that Sullivan did not actually believe that Hicks' medical information had to be updated or that such information had been fraudulent. As such, there is no evidence that Sullivan's conduct in question was retaliatory. Therefore, plaintiff has not met her burden of creating a genuine issue of material fact as to whether Sullivan's behavior was a pretext for retaliation.

Second, plaintiff has not created a triable issue as to whether Sullivan's or Stevens' reasons for denying Hicks access to the South Suburban premises were a pretext for retaliation. It is undisputed that Hicks was denied entry to South Suburban because she was told not to report to work if there was no available work, she caused disruption in her former unit, and Stevens' mere concern that Hicks could fall and cause further injury to herself while walking around the premises. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 48, 49.) Hicks does not argue that those reasons had no factual

basis, did not motivate the decision to deny her access or were insufficient to motivate the decision. *See Groh v. Gold Bond Bldg. Prods.*, 859 F.2d 1283, 1286 (7th Cir. 1988). Therefore, Hicks has failed to create a genuine issue of material fact as to whether Sullivan or Stevens' reasons for denying her access to South Suburban were a pretext for retaliation.

Finally, Hicks has not provided evidence that Sullivan's reason for not forwarding Hicks' request for a reasonable accommodation to the RAC was a pretext for retaliation. It is undisputed that after receiving Hicks' request, Sullivan explained to Hicks that if she was requesting permanent light duty, the collective bargaining agreement required Hicks to submit a medical certificate from the U.S. Public Health Service or a physician designated by the installation head. (Def.'s LR 56.1(a)(3) Stmt., Ex. 31, Letter from Sullivan to Hicks of 6/20/05, at 1.) The record does not show that Hicks ever obtained such a medical certificate as required to receive permanent light duty. Consequently, Sullivan never forwarded Hicks' requests to the RAC. (*Id.*) Hicks relies on the deposition of Steven Grieser, Chair of the RAC, who testifies that Sullivan should have forwarded Hicks' requests to the RAC, but even if she had, Hicks still would have needed the medical certificate to receive permanent light duty. (Pl.'s LR 56.1(a)(3) Stmt., Ex. M, Dep. of Grieser at 8-9, 27-29.) Based on Grieser's testimony, Hicks has failed to create a triable issue as to whether Sullivan's reason for not forwarding Hicks' requests to the RAC was a pretext for retaliation.

### B. Indirect Method

Even if the Court proceeded under the indirect method, it would still grant summary judgment in defendant's favor. Under the indirect method, Hicks must show (1) she engaged in protected expression; (2) she reasonably met her employer's expectations in relation to her job performance; (3) she suffered an adverse employment action; and (4) no similarly situated

employee, who did not file a discrimination charge, was subjected to an adverse employment action. *Stone*, 281 F.3d at 644. If a plaintiff cannot create a genuine issue of material fact as to any one of the elements needed to establish a *prima facie* case of discrimination under either method, then summary judgment must be granted in the defendant's favor. *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004).

Defendant does not dispute that plaintiff engaged in protected expression by filing an EEOC charge. And, as discussed above, the Court holds that Hicks created a triable issue of fact as to whether she suffered an adverse employment action solely with regard to her being placed on unpaid status due to defendant's denying her access to its South Suburban facility. Plaintiff has failed, however, to present any evidence that similarly situated employees, who did not complain, were treated more favorably. Moreover, as previously discussed, plaintiff has failed to create a triable issue regarding whether defendant's reasons for its conduct are a pretext for retaliation. Therefore, for the reasons stated above, the Court grants defendant's motion and denies plaintiff's cross-motion for summary judgment.

## Conclusion

For the reasons set forth above, the Court grants defendant's motion [doc. no. 54] and denies plaintiff's cross-motion for summary judgment [doc. no. 68]. This case is hereby terminated.

**SO ORDERED**                    **ENTER:    September 30, 2010**

_____
**RONALD A. GUZMAN**
**U.S. District Judge**